UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

    BOURASSA, ALISON H.,
    BOURASSA, OWEN J.,

        Debtors.

_____/

Case No. 08-49790

Chapter 7

Honorable Walter Shapero

## OPINION GRANTING TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)(3)

Before the Court is the United States Trustee's ("UST") Motion to Dismiss Under 11 U.S.C. § 707(b)(3) of the Bankruptcy Code. (Docket No. 14). The issue under § 707(b)(3) is whether the totality of the circumstances demonstrate abuse.

### I.

The debtors, Owen and Alison Bourassa, filed their voluntary chapter 7 petition on April 23, 2008. Debtors are in their mid-forties and have two sons, ages fourteen and nineteen. Debtor Alison Bourassa is employed as a teacher with the Farmington Public Schools, and has a net monthly income of $5,429.67. That employment is presently Debtors' only actual income source. Debtor Owen Bourassa is currently unemployed due to health difficulties and is attempting to secure social security benefits.

At the time of their bankruptcy filing, Debtors owned a house with a monthly first mortgage payment of $1,210.00, and a monthly second mortgage payment of $485.00. Additionally, they paid monthly real estate taxes of approximately $271.00, monthly homeowners insurance of $75.00, and spent roughly $90.00 per month on home maintenance. After their filing, they gave up the house and moved into their current residence which they rent for $1,200.00 per month.

At the time of filing, Debtors were making monthly payments of $504.00 on a 2007 Ford

-1-

Five Hundred.  They have since given this car and payment up.  The family now has one automobile, a 1995 Ford Bronco which is owned outright.  The Bronco is used primarily by the Debtors' nineteen year old son to drive to school and work.  Debtors' new residence is in close proximity to the school at which Alison Bourassa teaches, enabling her to walk to work.

At the time of filing, Debtors' nineteen year old son was away at college.  According to their Schedule J, Debtors appear to have been spending $500.00 per month on this son ($200.00 listed on Line 15 "Payments for support of additional dependents not living at your home" and $300.00 listed on Line 17 for "Older son's college expenses").  The son has since moved back home and has transferred to the local community college.

Schedule J also shows monthly payments of $650.00 for student loans.  At the hearing, Alison Bourassa testified that these payments were not currently being made, but would begin in the near future following expiration of periods of deferment or forbearance.  Schedule J also lists $150.00 each month for school supplies, which Alison Bourassa testified she purchases each month for her classroom.

Debtors' Schedule F lists unsecured debts totalling $119,702.52.  These debts are primarily attributable to student loans and consumer purchases.  The three student loans on the Schedule total $82,213.64 (a total of $15,409.00, $6,377.00, and $60,427.64).  With the exception of a $26.00 medical debt, the rest of the listed unsecured debts arose from consumer purchases.  While not listed as unsecured on the schedules, Debtors' counsel indicated his expectation that the second mortgagee on Debtors' former house would be filing an unsecured claim of approximately $40,000.

After reviewing Debtors' schedules, the UST filed the instant motion alleging that this case is an abuse.  Particular expenses that the UST took objection to were the $650.00 per month for student loans, $300 per month for the nineteen year old son's college expenses, and the $150.00 per month for school supplies.

**II.**

-2-

Authority to dismiss a case under chapter 7 is derived from § 707(b)(1), which provides in part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

In those cases where the presumption of abuse does not arise, or is otherwise rebutted, and where bad faith is not a factor, the Court is directed to consider the totality of the circumstances in determining whether dismissal for abuse is warranted. 11 U.S.C. § 707(b)(3)(B). The UST carries the burden of establishing by a preponderance of the evidence the applicability of this ground for dismissal.

*A.*

In the Sixth Circuit, a totality of the circumstances inquiry under § 707(b)(3)(B) involves an analysis of whether the debtor is honest or needy. *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Either factor, or both, may provide sufficient justification for dismissal for abuse. The UST relies primarily on language in *Krohn* which provides that where debtors have the ability to repay a meaningful portion of their debts from future earnings, their chapter 7 filing should be dismissed as an abuse. 886 F.2d at 126. In *Krohn*, and later in *Behlke*, the Sixth Circuit opined that a debtor's ability to repay his debts out of future earnings may alone justify dismissal for abuse, or more precisely, that "the ability to pay may be but is not necessarily sufficient to warrant dismissal" for abuse. *Behlke*, 358 F.3d at 434-35; *Krohn*, 886 F.2d at 126. This Court has on several occasions reviewed the decisions in *Krohn* and *Behlke* and has interpreted those opinions as follows: the sheer mathematical ability to fund a chapter 13 plan can, and properly should, be considered and weighed as one, but only one, factor within a totality of the circumstances analysis. *See*, *e.g.*, *In re Shelby*, No. 06-48745 (Bankr. E.D. Mich. July 25, 2007) and *In re Beckerman*, No. 06-49172 (Bankr. E.D. Mich. February 4, 2008). If, after considering all of the relevant circumstances,

equitable considerations favor dismissing the chapter 7 case based upon a debtor's ability to pay, it is within the Court's discretion to do so. Artificially limiting the Court's examination of a debtor's financial circumstances to one factor and one factor alone, the debtor's ability to repay debts out of future earnings, is at odds with the totality of the circumstances inquiry mandated by Congress and the message of *Krohn*, which itself observed that the ability to repay debts was "[a]mong the factors to be considered in deciding whether a debtor is needy . . . ." *Krohn* 886 F.2d at 126.

Whether a debtor is sufficiently needy to justify the relief sought under chapter 7 is determined by an examination of the following non-exclusive factors: (a) whether the debtor has the ability to repay his debts out of future earnings; (b) whether the debtor enjoys a stable source of future income; (c) whether the debtor is eligible for chapter 13 relief; (d) whether there are state remedies with the potential to ease the debtor's financial predicament; (e) whether relief may be obtained through private negotiations with creditors; and (f) whether expenses can be reduced significantly without depriving the debtor of adequate food, clothing, shelter and other necessities. *In re Krohn*, 886 F. 2d at 126-27. One consideration relevant to the first factor, whether the debtor has the ability to repay debts, is whether the debtor has sufficient disposable income to fund a hypothetical chapter 13 plan. *Behlke*, 358 F.3d at 435.

### i. Debtors' Ability to Repay Debts out of Future Earnings

According to the Debtors' Schedules I and J, which have not been amended, Debtors have a monthly deficit of $622.33. At the hearing, however, the testimony indicated that various updates or changes are needed for Schedules I and J, and there is not currently such a deficit.

The savings Debtors achieved by surrendering their house are significant. While the rent is only $10.00 less per month than the primary mortgage payment on their previous residence ($1,200.00 instead of $1,210.00), they no longer have the $485.00 second mortgage payment, $271.00 real estate tax payment, $90.00 per month in home maintenance, and their renters insurance is $45.00 less per month than their homeowners insurance ($30.00 instead of $75.00). These savings total $901.00 per month. The Court understands that these savings might not be able to be completely realized each month, for example, Debtors testified that they believe their utility bills at their new home might exceed the $280.00 per month average of their previous

08-49790-wsd    Doc 23    Filed 02/05/09    Entered 02/05/09 12:42:35    Page 4 of 6

home, but the Court is nonetheless convinced that the monthly savings achieved by the move are material.

The testimony also indicated that significant savings were achieved by not retaining the 2007 Ford Five Hundred, for which the monthly payment was $504.00 per month. Although the Debtors no longer have this monthly car payment, the testimony indicated that the 1995 Ford Bronco has required costly repairs of late. Numbers were not provided for these repairs, and the Court is not sure whether they would be covered under the $320.00 per month transportation expense on Line 8. The present accuracy of the $320.00 monthly transportation expense is also brought into question in light of the testimony that the Bronco is used primarily by the nineteen year old son who works and pays for his own gasoline. Regardless, the Court is hesitant to look too much to the transportation related savings (if any), because it is quite likely that Debtors will need to purchase a newer and more reliable car in the future.

Every indication is that Debtor Alison Bourassa's employment as a teacher is stable. In the future, she may earn supplemental income by teaching summer school if the opportunity presents itself. Her pay is currently structured such that she is paid year round, not just when school is in session. Additionally, Debtor Owen Bourassa testified that he is pursuing social security benefits, which, if obtained, will provide a supplemental source of income.

In light of the Debtors' budget, as it currently exists and is anticipated to exist into the future, there is sufficient disposable income to fund a chapter 13 plan. If, for example, Debtors paid $1,100.00 a month into a sixty month plan (which included treatment of the student loans and therefore made that $650.00 per month expenditure available as part of the plan payment), the Debtors would repay approximately $63,096 of the estimated $160,000.00 in unsecured debts, a roughly 39% dividend. While such inquiries do not lend themselves to exacting precision, the Court believes this a realistically feasible option under the current budget as testified to by Debtors.
Regardless, there are clearly funds that are presently available to be put towards a repayment plan should the Debtors desire to do so.

### ii. Reduction of Expenses

A review of the Debtors' expenses reveals that belt tightening is not out of the question, and, in fact, is more than reasonable. The expenses of greatest concern to the Court are those relating to Debtors' nineteen year old son. Schedule J shows Debtors spend $500.00 per month for this child.

While the Debtors desire to provide assistance to their adult child is admirable, it is difficult to justify in the bankruptcy context. While this Court has previously declined to go so far as to say that support for adult children is always unreasonable, no matter the nature and amount of such support, see *In re Beckerman*, No. 06-49172 (Bankr. E.D. Mich. February 4, 2008), the circumstances must be scrutinized closely. Here, the assistance appears somewhat excessive both in frequency and amount. It is one thing to help an adult child with an unexpected expense; it is quite another to provide support on a monthly basis which amounts to more than 9% of Debtors' net monthly income. It is not fair for unsecured creditors, who in such a case would receive nothing in a chapter 7.

### III.

The facts of this case indicate that Debtors (1) have the ability to repay debt through future earnings, and (2) are capable of significantly reducing their expenses without being deprived of food, clothing, shelter or other basic necessities.

For the foregoing reasons, the UST's Motion to Dismiss pursuant to § 707(b) is granted unless, within 20 days from the entry of the order effectuating the Opinion, the Debtor converts to a chapter 13 proceeding. The UST shall present an appropriate order.

**Signed on February 05, 2009**

                                                  **/s/ Walter Shapero**
                                      **Walter Shapero**
                                      **United States Bankruptcy Judge**